GULOTTA, Judge.
Defendants appeal from a trial court judgment awarding damages to three plaintiffs for injuries sustained from an automobile/tractor-trailer truck accident. We reverse.
On Friday, June 18,1976 Robert Harrison was driving an automobile in a southerly direction on Bienville Street. Other occupants of the vehicle were Jacqueline Montana, seated in the middle front, and August Harris, seated in the right front. Harris was the owner of the automobile. The tractor-trailer truck was also traveling in the same direction on Bienville Street. After having halted for a stop light at the intersection of Bienville and Broad, the truck struck the rear-end of the automobile when the vehicles had reached a location approximately 100-150 feet from the intersection of N. Rocheblave and Bienville Streets.
Plaintiffs’ version of the accident is that while traveling in the direction of South Claiborne Avenue, on Bienville Street in the vicinity of N. Rocheblave, a large depression or hole extending across the entire width of Bienville Street caused Harrison to slow the speed of his automobile. At this point, while their automobile was still moving slowly in a forward direction, it was struck in the rear by the tractor-trailer truck. The testimony of all three plaintiff-occupants supported this version.
Defendants’ version, as testified to by the truck driver, is that the plaintiffs’ vehicle had earlier passed the truck on the left in the vicinity of Broad and Bienville Streets. After the truck had stopped for a signal light between Broad and N. Rocheblave Streets and was traveling forward at a speed between 15 and 20 miles per hour in third gear, the plaintiffs' vehicle (directly in front of the truck) began backing up toward the truck until they collided. Although an investigation was made of the accident, no police report was offered into evidence and no testimony was received regarding the circumstances surrounding the accident, other than from plaintiffs and the defendant truck driver.
Apparently immediately after the matter was submitted, the trial judge stated, in pertinent part:
“. . . The Court is of the opinion that none of the witnesses were able to tell the Court what really happened. The Court knows, for example, that there is no signal light between Broad and Mario Street on Bienville Street and there has not been any. The Court does know, or the Court believes, that an accident did happen. The Court does not believe these people were backing into this truck. The Court believes that it happened so quick *466 ly, that the driver of the tractor-trailer doesn’t know for sure what did happen. We know that an accident was investigated, and we know that, even in the words of the driver of the tractor-trailer, all three of the people appeared to be injured. . . . ”
It is clear from a reading of the trial court’s reasons that he accepted plaintiffs’ version of the accident and rejected defendants’ version. While apparently not casting doubt as to the truck driver’s veracity, it is apparent that his judgment is based upon a credibility determination after evaluation of the conflicting testimony.
Although we are cognizant of the advisability, if not the necessity of a trial judge rendering a judgment from the bench immediately after the matter is submitted, we are cognizant also that in some few instances the best of well-intentioned jurists commit error. Our evaluation of the testimony is one of those cases in which we conclude that the trial judge fell into manifest error.
We recognize and are often reminded of the pronouncement of Canter v. Koehring Company, 283 So.2d 716 (La.1973), in which the Supreme Court stated that when there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluation and inferences are as reasonable. See also Arceneaux v. Domingue, 365 So.2d 1330 (La.1979), where the Supreme Court stated that the appellate court should not disturb a finding of fact unless it is clearly wrong, and Dyson v. Gulf Modular Corp., 338 So.2d 1385 (La.1976), in which the Supreme Court reiterated that the appellate court simply is not free to substitute its own version of the facts, however reasonable it may be, for facts as determined by the trial court unless the lower court committed manifest error by finding facts not reasonably supported by credible evidence in the record.
Relying on these jurisprudential mandates we could easily, in a superficial way, restate the oft-repeated reasons for not finding manifest error; but to do so in this case would constitute a dereliction of our constitutionally-placed responsibility to properly review both law and fact.[1] See Sanders v. Hall, 345 So.2d 590 (La.App. 4th Cir. 1977), writ granted, 347 So.2d 248 (1977), on remand, 350 So.2d 262, writ refused December 2, 1977; Barry v. Billac, 250 So.2d 516 (La.App. 4th Cir. 1971).
Consistent with our duty, and after a review of the evidence, we are led to conclude that plaintiffs’ version of the accident is not supported by “credible” evidence. The innumerable and glaring inconsistencies and contradictions in the testimony of the three plaintiff witnesses (which become readily apparent after a reading, re-reading, and comparison of that testimony, not available to the trial judge) test credulity. We point out some of those inconsistencies as unfolded in the record.
The accident-prone Robert Harrison, driver of the automobile was involved in six accidents resulting in back injury between October 1974 and December 1, 1976. Five of these “injuries” resulted from automobile accidents and one resulted from a slip-and-fall incident. All of these incidents resulted in the filing of claims, or money settlements.
The first accident in which this plaintiff was involved occurred on October 24, 1974 when he slipped and fell in a Popeye’s Restaurant injuring his neck and back. This occurrence was followed by a November 19, 1974 automobile accident in which this plaintiff injured his back. Robert Harrison claimed that on May 20, 1976, while driving a truck, he sustained injury to his neck and lower back when another vehicle backed into the truck. Interestingly, August Harris, another of the plaintiffs in this case, was a passenger in the truck at the time of the May 20th accident and suffered injury *467 to his neck and lower back. According to the history given to Dr. Alvin M. Cotlar, who testified in this case, Harris struck his head on the dashboard in the May 20th accident, as he did in the June 18th accident. Both of these plaintiffs at that time were treated by Dr. Cotlar and both were last seen by him on June 24, 1976.
The June 18, 1976 accident, with which we are concerned in this case, was followed by a June 21, 1976 accident at Canal and Claiborne Avenues. The three plaintiffs in our case were also occupants of the same automobile in the June 21st accident. According to their testimony, on the Monday following the June 18th accident, after seeing an attorney recommended by Harrison, and while on their way to the doctor’s office recommenced by the attorney, they were struck by another automobile which was in the process of negotiating a turn. The testimony indicates that all three parties received settlements from that accident. It is significant that although Harrison and Harris had been under the care of Dr. Cotlar from May 24th through June 24th, 1976, no mention was made to Dr. Cotlar on their June 24th visit of the June 18th accident or of the “serious” injuries sustained by them in that accident. Also significant is Dr. Cotlar’s testimony that in the history given to him by Harrison, he denied being involved in any previous accidents or sustaining any back or neck injury.
The next accident in which Harrison was involved, and in which he again sustained lower back injury, occurred on December 1, 1976 on Touro Street. According to his testimony, this claim was also settled. We reiterate that Harrison sustained back injuries from accidents in October 1974, November 1974, May 20, 1976, June 18,1976, June 21, 1976 and December 1, 1976. He was incarcerated in jail in March 1977 and apparently was still incarcerated at the time of trial on May 29, 1979.
Jacquelyn Montana, who was a passenger in the automobile driven by Harrison on two of the five occasions where accidents occurred, testified that on June 18th, while she was at a bus stop at the intersection of either Canal and Broad Streets, or Canal St. and Tulane Ave., Harrison and Harris “picked her up”. In describing her relationship with Harrison she stated that “we have always been friends, not real close.” Later in the record, however, in Robert Harrison’s testimony, he stated, “Jacqueline Montana has a son for me,” and “That’s what I am saying, we were common-law husband and wife.” Harrison contradicted Montana’s testimony when he stated that he did not pick her up accidentally on the street on June 18th, but picked her up at her house. Harrison contradicted his own testimony when he later described the relationship with Montana as “we were friends, that’s all.” Montana’s and Harrison’s child was about one or two months of age at the time of the accident.
Another interesting contradiction is Harrison’s testimony that the automobile involved in the June 18th accident had not been damaged before that accident and that he drove it frequently, indicating that he would have knowledge of and would have seen damage to the automobile in areas other than the rear. His testimony was contradicted by John B. Abadie, an appraiser. This appraiser stated the appraisal damage form indicated that an inspection of the vehicle revealed earlier damage to the car on the front, right and left fender and hood, which was not figured in the appraisal for the June 18, 1976 accident.
Dr. John Lindner, a general practitioner, to whom the three plaintiffs had been referred, saw them on June 21, 1976. Montana’s diagnosis was lumbar strain and contusion of the lower abdomen. Harrison’s diagnosis was acute, severe cervical sprain and strain of upper back and contusion of chest. Harris’ diagnosis was headache, pain and stiffness of neck and shoulder, acute cervical sprain, and acute sprain of back. All three received similar treatment which was in the nature of muscle relaxants, pain killers, heat treatment and therapy. Cervical collars were prescribed for Harrison and Harris. Montana was discharged on October 11, 1976; Harrison was discharged on October 19, 1976; and Harris was dis *468 charged on October 13, 1976. Montana’s bill was $535.00; Harrison’s bill was $550.00; and Harris’ bill was $565.00.
It is most significant that neither Harrison nor Harris mentioned the May 20, 1976 accident to the doctor. The failure to tell Dr. Lindner of the May 20th accident is particularly significant when connected with the fact that Harrison and Harris were under treatment of Dr. Cotlar from the earlier accident and made a last visit to him on June 24, after the first visit to Dr. Lindner. We also note that Harrison insisted Dr. Cotlar discharge him on that date, although Dr. Cotlar did not feel he was ready for discharge.
August Harris’ testimony added little, if anything, to clarify the June 18th accident. He testified that the accident happened on Bienville Street between Roeheblave and Tonti. According to Harris, something hit the back of the car and he hit his head. He does not remember the June 21st accident and suffers from loss of memory from a head injury. Although he remembers seeing Dr. Lindner he does not remember the type of treatment received. He stated that his loss of memory commenced in March 1978 and does not recall being in the May 20, 1976 accident.
Robert Howell, the truck driver, stated that while he was traveling on Bienville St., near the intersection of Broad, plaintiffs’ automobile, when attempting to pass, crowded the truck to the right and came within inches of hitting him. He testified that when the automobile was even with the cab of the truck “they were laughing and everything else. He was looking straight up at me and trying to play with me and I just slowed down so they could go ahead of me and keep away from any kind of accident.” Howell added that after he had stopped for a red light, he commenced moving forward and had reached third gear at a speed of approximately 15 or 20 miles per hour, when he suddenly saw the automobile coming back in reverse and it struck the truck. According to his testimony, he was unable to avoid the impact.
He testified that, although he was not familiar with the street names in New Orleans (he resides in Texas), he stopped for a signal light on Bienville St. between the Broad-Bienville intersection, and where the accident happened. As pointed out by the trial judge, Howell was mistaken as to the location of the signal light. Although his testimony was not entirely clear, we are led to conclude, when comparing his testimony with that of the three plaintiff witnesses, that Howell was telling the truth. Under these circumstances we place no credibility whatsoever in plaintiffs’ version of the accident.
Having so concluded, and having found manifest error, we reverse the judgment of the trial court and dismiss plaintiffs’ suit at their costs, and at their prejudice.

REVERSED AND RENDERED.

. LSA-Const. 1974, Art. 5, Section 10(B) provides:
“Except as limited to questions of law by this constitution, or as provided by law in the review of administrative agency determinations, appellate jurisdiction of a court of appeal extends to law and facts.”